**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF MICHIGAN**

**SOUTHERN DIVISION**

Case: 4:26-cv-13913
Assigned To : Kumar, Shalina D.
Referral Judge: Altman, Kimberly G.
Assign. Date : 10/14/2026
Description: CMP SWEIGERT V GOOLE LLC ET AL (lh)

October 13th, 2026

GEORGE WEBB SWEIGERT,

Plaintiff,

v.

GOOGLE LLC, doing business as YouTube;

MARK R. WARNER, in his official capacity as United States Senator; and

CABLE NEWS NETWORK, INC.,

Defendants.

Case No.: ___________________

District Judge: ______________________

Magistrate Judge: ______________________

**INDIVIDUAL COMPLAINT FOR VIOLATIONS OF CONSTITUTIONAL SPEECH AND PRESS RIGHTS, DECLARATORY AND INJUNCTIVE RELIEF, AND DEFAMATION**

Plaintiff George Webb Sweigert alleges the following. The Plaintiff alleges a loss of over one million dollars of personal life savings investment in a 111,000 person

citizen journalism network has been destroyed twice, by the decade long harassment and predatory practice of CNN, Donie O'Sullivan, Senator Mark Warner, and YouTube.

**PARTIES AND NATURE OF ACTION**

1. George Webb Sweigert, professionally known as George Webb, is an independent journalist and educator residing in Lambertville, Monroe County, Michigan. He is the sole plaintiff and seeks relief for his own injuries.



2. He identifies his full name in this action as George Webb Sweigert and uses George Webb in his journalism. George Webb Sweigert is pictured here to the right during a Neighborhood News broadcast wth cofounder Aaron Adler in October 2026.

3. Defendant Google LLC operates the YouTube service and is identified here as doing business as YouTube ("YouTube"). Its published service-provider address is 1600 Amphitheatre Parkway, Mountain View, California 94043. Plaintiff names this defendant for its alleged participation in government-directed suppression of his reporting. If another entity, including YouTube, LLC, participated in the challenged conduct, Plaintiff will seek appropriate amendment based on that entity's actual role.

4. Defendant Mark R. Warner is a United States Senator. His Washington office is 703 Hart Senate Office Building, Washington, DC 20510. He is sued in his official capacity for prospective relief from alleged unconstitutional conduct outside the protection afforded legitimate legislative activity. Plaintiff does not seek First Amendment damages against Warner under Bivens.

5. Defendant Cable News Network, Inc. ("CNN") operates a news organization with Atlanta operations at 1050 Techwood Drive NW, Atlanta, Georgia 30318. CNN reporter Donie O'Sullivan is identified as an alleged participant and potential witness, not a separate defendant. References to other spellings of his name in

Plaintiff's earlier descriptions are intended to refer to Donie O'Sullivan unless distinct persons are identified by evidence.

6. This action seeks recompense for violations of Plaintiff's fundamental freedoms of speech and press through government use of YouTube as a private proxy, resulting in a loss of nearly one million dollars of personal savings invested into building a worldwide citizen journalism network. Plaintiff alleges that Warner's overt governmental intervention, CNN's continuous and hostile participation, and YouTube's continual responsive suppression deprived him of his reporting archive and audience.

7. Plaintiff asks for judicial relief and injunction of defendants' conduct and restoration of his legal rights and recompense for his one million dollars investment in a citizen journalism worldwide network. He does not ask the Court to declare every disputed proposition in his journalism true or to impose liability simply because defendants criticized him.

**JURISDICTION, VENUE, AND RELATED LITIGATION**

8. Federal-question jurisdiction is asserted under 28 U.S.C. § 1331 over Plaintiff's claim for prospective relief from violations of the First Amendment and the equal-protection component of the Fifth Amendment. The equitable basis of that claim, sovereign-immunity defenses, and the availability of relief against the particular defendants remain subject to judicial determination. The Declaratory Judgment




Act, 28 U.S.C. §§ 2201-2202, supplies a remedy and is not an independent jurisdictional grant.

9. Supplemental jurisdiction over related state-law claims is asserted under 28 U.S.C. § 1367.

10. Venue is proper in the Eastern District of Michigan under 28 U.S.C. § 1391(b)(2) because Plaintiff alleges that a substantial part of the events and omissions giving rise to this action occurred in this District. During the approximately six-year period at issue, Plaintiff operated the Neighborhood News studio at 8150 Summerfield Road, Lambertville, Michigan, for the last two years, and at 167 West Stearns Road, Suite D, Temperance, Michigan 48182, for the preceding four years (collectively, the "Michigan Studio Locations").

Plaintiff alleges injury to his enterprise at the location in operation during each respective period. Both locations are in Monroe County, within this District's Southern Division under 28 U.S.C. § 102(a)(1).

11. Plaintiff alleges that injuries to his Neighborhood News journalism and educational enterprise occurred at the Michigan Studio Locations during their respective periods of operation: 8150 Summerfield Road during the last two years




and 167 West Stearns Road, Suite D, Temperance, Michigan 48182, during the preceding four years. (Screenshot from George Webb - Neighborhood News Broadcast, October 10th, 2026)

He alleges that the most recent challenged injury also occurred at 8150 Summerfield Road. That injury included impairment of access to his online reporting and educational archive and the audience associated with that enterprise.

12. Plaintiff alleges that the preponderance of the injury to his business, educational programming, reporting archive, and audience relationships has occurred in Michigan. He contends that these substantial local connections make this District a proper forum to adjudicate his claims. The statutory basis is substantial claim-related events and omissions;

Plaintiff contends that the largest share of damages, by itself, makes Michigan the only permissible venue.

13. Plaintiff's field travel and temporary safety-related relocation to Georgia did not, according to Plaintiff, eliminate the Michigan Studio Locations' role as the principal bases of his enterprise during their respective portions of the six-year period. The Plaintiff had already lost an ex-Police Officer research partner to suspicious death in August of 2018. Jenny Moore died at 49 years old. Brian Lloyd, a similar attorney and research partner in Washington, DC, had died suspiciously in May 2020 after making revelation about Ft. Belvoir, Virginia. Two black doctors who were Colonels in the US Army were also murder in their front

yard near Ft. Belvoir. George Webb had reported about their involvement in the 2019 Wuhan Military Games.

The Plaintiff cannot proved these deaths were related to his safety, but sought to protect himself through frequent movement, covering news stories around the world

Plaintiff alleges a continuing business connection to those locations while distinguishing that connection from his physical residence at particular times.

14. The local consequences alleged include disruption of journalism and STEM educational activities based at the Michigan Studio Locations during their respective periods of operation, impairment of the educational archive serving Michigan youth, and impairment of the programming supporting an orphanage serving 18 children in Ghana. Plaintiff seeks recovery for his own injuries; the children and orphanage are not plaintiffs.

15. Plaintiff identifies the Michigan Studio Locations as the places where the challenged restrictions injured an established Michigan enterprise, rather than merely the location to which he later moved. He will identify the particular defendant acts occurring in or directed at Michigan and the relationship of those acts to the claims.

16.




Plaintiff also invokes 28 U.S.C. § 1391(e)(1)(C) for the official-capacity claim against Warner, to the extent applicable, because Plaintiff resides in this District and no real property is involved. That provision does not automatically establish venue for the private defendants or personal jurisdiction over them.

17. Plaintiff asserts personal jurisdiction based on the claim-related Michigan contacts of each defendant, as supported by the facts to be supplied. The affected enterprise's Michigan location is part of that inquiry but does not alone establish jurisdiction over every defendant. YouTube has destroyed without warning




thousands of on site video reports and livestream twice with George Webb in 2021

and 2026, and over twenty times with Neighborhood News broadcasts.See Walden v. Fiore, 571 U.S. 277 (2014).

18. Plaintiff discloses Sweigert v. Cable News Network, Inc., No. 2:20-cv-12933-GAD-KGA (E.D. Mich.). The March 21, 2022 opinion and order, ECF No. 60, dismissed that action. Its existence supplies historical context, not automatic venue, a favorable merits determination, or permission to relitigate barred claims.

19. Plaintiff alleges that, during the earlier litigation, an armed stalker entered his Michigan news studio and seized all studio drives and backup devices. Plaintiff alleges that the incident caused him to flee Michigan and relocate to Georgia for safety, disrupted access to his reporting materials, and impaired his ability to prosecute the earlier case.

20. Plaintiff contends that his forced relocation and CNN's Georgia presence created procedural and domicile-related difficulties during the earlier litigation. This is Plaintiff's account of the circumstances affecting prosecution; it is not a representation that the March 21, 2022 order dismissed solely for a temporary domicile or diversity technicality. The Court's stated grounds and the judgment remain part of the record and must be addressed on their own terms.




21. Plaintiff identifies the earlier case as a possible companion case under E.D. Mich. LR 83.11(b)(7)(A)-(D), because Plaintiff and CNN overlap and substantially similar historical reporting, publications, and communications may be offered as evidence. Subsection (B) permits companion treatment even when one case has terminated. Plaintiff requests appropriate related-case review and assignment in the interests of judicial efficiency, subject to the Court's determination and the earlier judge's consent where required. Plaintiff will disclose the earlier action on the civil

cover sheet or electronic filing system as subsection (C) requires. LR 83.11(c) is also disclosed for consideration to the extent the Court determines this is a refiled action. The earlier case is cited as relevant procedural history, not as controlling favorable precedent, an automatic entitlement to expedited adjudication, or a substitute for venue and jurisdiction.

22. This action principally concerns later events, including the August 2026 channel termination and any provable present or threatened government-directed suppression. Plaintiff offers older events as relevant background only to the extent permitted by limitations and preclusion rules. He does not allege that a new legal label defeats claim preclusion or revives expired claims.

23. Plaintiff bases this action on fundamental constitutional freedoms of speech and press and alleged suppression through a governmental proxy. Any platform terms asserted by YouTube as a defense, including a forum-selection provision, remain subject to judicial determination. Plaintiff requests adjudication in Michigan on the substantial local events alleged above. Characterizing the claims as constitutional does not by itself resolve the applicability of a forum provision.

**PLAINTIFF'S JOURNALISM AND ARCHIVE**

24. Plaintiff invested years of labor and substantial personal resources in original reporting, interviews, research, educational coursework, music, and citizen-journalism projects distributed through YouTube. During the approximately six

years at issue, he conducted this enterprise principally through the Michigan Studio Locations during their respective periods of operation.

25. His archive included reporting concerning January 6, 2021; the attempted assassination of Donald Trump in Butler, Pennsylvania; Suchir Balaji's death; Charlie Kirk's death; and SARS-CoV-2 origins, laboratory research, university research, federal agencies, military exercises, and pandemic preparedness.

26. The Michigan Studio Locations have served, during their respective periods of operation, as bases for Plaintiff's science, technology, engineering, and mathematics (STEM) education for Michigan youth. Sample coursework and educational video series include "Make Your Kid a Doctor," "Make Your Kid a Nurse," "Make Your Kid a Farmer," and "Make Your Kid an Engineer."

27. Plaintiff also provides, through the Michigan Studio Locations during their respective periods of operation, educational programming supporting an orphanage serving 18 children in Ghana. This allegation describes the Ghana project's connection to the Michigan enterprise; it does not allege that the orphanage itself is physically located in Michigan.

28. The affected archive also included a Michigan citizen-journalism school project, a Ghana orphanage and school project, citizen-science videos, citizen-musician and music videos, cultural material, and original research. Plaintiff alleges that loss of access impaired the use of those materials in his educational work.

29. Plaintiff alleges that the account restrictions and archive loss burdened the journalistic and educational activities conducted through the Michigan Studio Locations during their respective periods of operation. The claimed harm extended beyond individual political videos to coursework and other original programming.

30. The affected courseware, including "Make Your Kid a Doctor," "Make Your Kid a Nurse," "Make Your Kid a Farmer," and "Make Your Kid an Engineer," represented approximately 25 years of Plaintiff's curriculum development. Plaintiff alleges that the injury was not confined to loss of access to individual livestream lessons: it impaired the accumulated instructional materials and the ability to use the resulting curriculum in his educational work.

31. Plaintiff alleges irreparable harm to the educational enterprise operated at the Michigan Studio Locations during their respective periods, including 8150 Summerfield Road, Lambertville, Michigan, for the last two years and 167 West Stearns Road, Suite D, Temperance, Michigan 48182, for the preceding four years, because removal of the courseware deprived that enterprise of access to a distinctive body of instructional work developed over decades. Recreating the coursework would require substantial time and effort and would not necessarily restore the original recordings, interviews, instructional context, or established audience. The alleged injury also impaired educational programming for Michigan youth and support for the Ghana orphanage serving 18 children.

32. Plaintiff seeks preservation, recovery, and appropriate restoration of surviving curricular materials in addition to monetary relief. Plaintiff alleges loss of access and destruction to the extent supported by evidence; he does not equate disappearance from the platform with established permanent deletion of every underlying file. He contends that damages alone cannot fully remedy the continuing loss of this unique educational resource.

33. Plaintiff distinguishes investigation and hypotheses from established facts. He alleges that his fundamental constitutional freedoms of speech and press, where government action exists, do not depend on official approval of every opinion he expressed.

34. Plaintiff's audience relationships, subscriber access, interviews, metadata, playlists, and distribution history formed part of his professional work. Loss of that archive impaired his ability to reach existing viewers, develop new reporting, and direct viewers to his work.

**JUNE 2017 THROUGH APRIL 2020**

35. Plaintiff alleges that CNN's adverse coverage of his reporting began in June 2017. That time period was also described in the earlier Michigan case. Plaintiff further suspects coordination involving Warner, CNN, and YouTube during that period. He presently identifies the April 2020 material below as a concrete basis for investigating coordination; he does not present a June 2017 agreement involving all defendants as independently established.

Meanwhile, YouTube also being hammered from the left

Donie O'Sullivan emails: Virginia Senator Mark Warner blasted YouTube on Tuesday after a CNN report Monday detailed how a US Army reservist in Virginia had become the target of conspiracy theorists falsely putting her at the start of the coronavirus outbreak. Warner's office reached out to YouTube on Monday asking why the company hadn't taken down all the videos targeting the woman.

YouTube told CNN Monday that it had taken down videos from conspiracy theorist George Webb's YouTube channel targeting Maatje Benassi, the US Army reservist. Warned told CNN Tuesday, "This shouldn't be something that requires attention from a major news network and a U.S. Senator to fix."

"It's clear that the blanket grant of immunity for sites like YouTube has resulted in platforms that are too big and unresponsive to the harms they promote," he added, saying Congress need to act. YouTube said it will continue monitoring Webb's YouTube channel.

Fact check info panels head to United States

Speaking of YouTube and misinfo... YouTube announced on Tuesday that it will expand its fact check information panels to the United States. The panels display fact checks when users search certain key words and topics. The company noted people rely on YouTube for accurate information, adding that the pandemic "has reaffirmed how important it is for viewers to get accurate information during fast-moving events." YouTube is partnering with over a dozen publishers in the United States, includingThe Dispatch, WaPo, FactCheck.org, and others.

© 2022 Cable News Network. A Warner Media Company. All Rights Reserved.

Listen to CNN (low-bandwidth usage)

Go to the full CNN experience

36. Plaintiff possesses a screenshot of a CNN newsletter passage attributed to Donie O'Sullivan. The passage reports that Warner's office contacted YouTube after CNN reporting and asked why all videos concerning an Armed Diplomatic Security Services Officer, working for the Supreme Allied Commander of NATO, had not been removed. It also reports YouTube's removal of videos from Plaintiff's channel and continued monitoring of that channel.

37. The screenshot also reports Warner's criticism of platform immunity and his view that congressional action was needed. Plaintiff contends that the combination of a request aimed at his particular channel and reference to congressional

consequences supports an inference of pressure. Whether it amounted to coercion requires consideration of the complete communications, authority, context, and platform response.

38. Plaintiff places the initial episode in approximately April 27-28, 2020. The existence of adverse CNN reporting and subsequent removal does not by itself establish an unconstitutional agreement.

39. Plaintiff alleges on information and belief that YouTube acted in response to Warner's intervention at least in connection with that episode. The reported contact and reported removals supply the basis for the inference. The exact instructions, recipients, timing, and decision records have not been established by the screenshot alone.

40. Plaintiff's theory is that an official may not use governmental leverage to compel private suppression of protected reporting that the government could not itself suppress. Plaintiff does not claim that a news organization's questions, fact-checking, criticism, or policy complaints become unlawful merely because an official agrees with them.

**REPEATED HARASSMENT AND AUGUST 2026 TERMINATION**

41. Plaintiff reports more than 24 adverse enforcement episodes during approximately six years beginning in April 2020 and extending through August 2026. Episodes may include removals, restrictions, loss of access, audience impairment, or channel termination. Plaintiff does allege on or about 20 complete

channel deletions, and will ask the Court for YouTube's exact records in this regard in Discovery.

42.YouTube also destroyed without warning of over 4,000 on-site reports and interviews in 2021 and several additional hundreds videos and livestreams in August of 2026 for George Webb personal channels.

43. On or about August 20-21, 2026, YouTube terminated or disabled Plaintiff's channel and rendered approximately 4,000 videos unavailable through that channel, according to Plaintiff's account. Plaintiff alleges that this termination injured the reporting and educational enterprise based at 8150 Summerfield Road. He also alleges that the most recent injury occurred at that same location; the specific date and account action for that latest injury will be identified separately if it differs from the August termination.

44. The affected archive included the subjects and educational projects identified above. Plaintiff alleges that wholesale termination impaired access to substantial material unrelated to any particular asserted policy violation.

45. Unavailability does not itself establish permanent deletion of underlying files. Plaintiff requests preservation and recovery of whatever files and records remain and alleges permanent destruction only where supported by evidence.

46. Plaintiff alleges that the restrictions described above violated his constitutional freedoms where they resulted from coercive government intervention, significant encouragement, or other legally attributable governmental conduct. He seeks to

identify the particular government request, participating persons, responsive platform action, and resulting injury for each challenged episode.

47. Plaintiff alleges on information and belief that prior targeting has been continuous by Donie O'Sullivan of CNN and Senator Warner since 2017 over the last decade since Webb reported extensively on the Awan Spy Ring in the US Congress.

48. Plaintiff alleges continuing injury from loss of access to his archive and audience. For prospective relief against Warner, he must also identify an ongoing directive or a concrete, imminent threat of renewed government-caused suppression.

**GOVERNMENT PROXIES, UNEQUAL TREATMENT, AND SEPARATION OF POWERS**

49. Plaintiff describes the alleged system as "free-speech apartheid": favored institutional speakers receive distribution while disfavored independent journalists lose access. The phrase is a description of his asserted viewpoint hierarchy, not an allegation of racial segregation.

50. Plaintiff alleges that the challenged distinction, if attributable to federal action, burdens his speech and press activity on account of viewpoint.

51. Plaintiff associates the alleged favoritism with Warner's political preferences, the Democratic Party, and the DNC due to the DNC's close connection to the Awan Spy Ring in Congress over decade in Washington, DC..

52. Plaintiff invokes Brown v. Board of Education, 347 U.S. 483 (1954), as an analogy against government-imposed inferior status. YouTube has established a "separate but equal" apartheid for speakers it approves of and speakers it disapproves of. The operative speech theory here rests on viewpoint discrimination and legally attributable government conduct. For federal equal-protection principles, Plaintiff invokes Bolling v. Sharpe, 347 U.S. 497 (1954).

53. Plaintiff invokes Marbury v. Madison, 5 U.S. (1 Cranch) 137 (1803), for judicial review of unconstitutional governmental action. He alleges that an official cannot make an informal suppression demand legally binding merely by labeling journalism misinformation.

54. Plaintiff identifies the federal Disinformation Governance Board as historical context for his concern about official misinformation programs. Its existence does not establish Warner's participation, a directive concerning Plaintiff, or an unconstitutional act. Plaintiff does not seek punishment for creation of a board alone, but offers the example to show Pattern and Practice of DNC.

55. Plaintiff asserts the freedoms of speech and press and the ability to pursue his journalism and livelihood. The Declaration of Independence's language concerning

life, liberty, and the pursuit of happiness expresses the interests underlying his request; it is not an independent statutory cause of action.

**CONSTITUTIONAL SUPREMACY, PRIVATE PLATFORM RULES, AND THE ASSERTED FAIRNESS THEORY**

56. Article VI, Clause 2 makes the Constitution and valid federal law supreme over conflicting state law. Plaintiff contends that platform Terms of Service cannot confer authority on a government official to suppress protected journalism through a private intermediary. If the challenged moderation decisions are legally attributable to governmental coercion or significant encouragement, a platform-policy label does not eliminate constitutional review. The government-proxy standards in Bantam Books and Vullo remain central to this contention.

57. Plaintiff does not assert that the Supremacy Clause independently creates a damages cause of action or converts every private moderation decision into government action. See Armstrong v. Exceptional Child Center, Inc., 575 U.S. 320 (2015). His contention is that defendants cannot shield proven unconstitutional governmental conduct merely by describing it as application of private platform rules. Any asserted waiver, forum provision, statutory immunity, or independent editorial justification must be evaluated under the applicable law and facts.

58. Plaintiff invokes Dred Scott v. Sandford, 60 U.S. (19 How.) 393 (1857), and the later Reconstruction Amendments as historical illustrations of the importance of constitutional protection against legally entrenched inferior status.

59. The Plaintiff invokes Dred Scott as technically violating his "Terms of Service" by escaping enslavement. The Supremacy of the 13th Amendment prevents the slave owner from using "Terms of Service" as a ruse to avoid adherence to the Constitution.

60. Dred Scott involved claimed freedom based on residence in free jurisdictions, not violation of modern "Terms of Service." The decision preceded the Thirteenth Amendment, ratified in 1865, which abolished slavery and involuntary servitude subject to its express exception, and the Fourteenth Amendment, ratified in 1868. After abolition, a private ownership claim or purported arrangement could not lawfully authorize prohibited slavery. Plaintiff uses that history as an analogy about constitutional limits, not as an allegation that YouTube moderation constitutes slavery or a separate Thirteenth Amendment violation.

61. Plaintiff further contends that YouTube's asserted market dominance warrants examination of any applicable common-carrier or nondiscrimination duties. He proposes a market-share figure of 99.73%, but its source, relevant market, geographic scope, denominator, and measurement period remain unverified.

Monopoly power alone does not establish that a particular platform function is legally a common-carrier service. See Moody v. NetChoice, LLC, 603 U.S. 707 (2024), regarding constitutionally protected editorial functions.

62. Plaintiff describes the alleged government-created hierarchy of approved and disapproved speakers as "free-speech apartheid" and invokes Brown v. Board of Education, 347 U.S. 483 (1954), by analogy to its rejection of racial segregation in public schools. The claimed constitutional wrong here is government-attributable viewpoint discrimination against his journalism and educational work, rather than racial segregation or a proven common-carrier violation. A private platform's size and disparate treatment, without the required governmental nexus or applicable statutory duty, do not alone establish that claim.

**COUNT I — FIRST AMENDMENT: ALLEGED GOVERNMENT-INDUCED VIEWPOINT SUPPRESSION**

**Prospective equitable relief against Warner; relief concerning private defendants only to the extent legally attributable government conduct is established**

63. Plaintiff incorporates paragraphs 1-55. The alleged protected activity is his public-interest journalism and publication. The alleged adverse action is government-induced removal or restriction of that work and the associated archive and audience access.

64. Bantam Books, Inc. v. Sullivan, 372 U.S. 58 (1963), and National Rifle Association of America v. Vullo, 602 U.S. 175 (2024), recognize that government may violate the First Amendment through coercive pressure on private intermediaries. An official's ability to criticize speech is distinct from using governmental power to suppress it.

65. Plaintiff relies on the reported direct intervention concerning his channel, the reported removal response, and any additional particularized evidence supplied in Exhibits A-C. He alleges that the conduct, if coercive and causally connected as claimed, exceeded permissible persuasion and targeted protected viewpoints.

66. Plaintiff requests a declaration concerning any established unconstitutional ongoing directive and a narrowly tailored injunction preventing Warner from coercing suppression of Plaintiff's protected reporting. Relief against YouTube or CNN requires a legally sufficient basis attributable to their own actionable conduct. Private editorial discretion remains relevant under Moody v. NetChoice, LLC, 603 U.S. 707 (2024).

67. Plaintiff does not invoke 42 U.S.C. § 1983 solely on the basis of a federal senator's acts. He does not seek a new Bivens damages remedy for First Amendment retaliation. See Egbert v. Boule, 596 U.S. 482 (2022). Legitimate legislative acts remain subject to the Speech or Debate Clause and Eastland v. United States Servicemen's Fund, 421 U.S. 491 (1975); relief sought here is limited to actionable conduct outside that protection.

**COUNT II — FEDERAL EQUAL PROTECTION AND VIEWPOINT DISCRIMINATION**

**Alternative prospective equitable theory against Warner**

68. Plaintiff incorporates paragraphs 1-67. He alleges that any proven federal directive dividing otherwise comparable speakers by approved and disapproved viewpoints denied him equal constitutional treatment and burdened speech and press activity.

70. Plaintiff requests prospective relief against any proven ongoing discriminatory governmental directive. He seeks no blanket order compelling equal algorithmic exposure or suppressing defendants' own speech.

**COUNT III — DEFAMATION: KNOWINGLY FALSE FACTUAL PUBLICATIONS**

**Against CNN; Michigan law, to the extent applicable**

71. Plaintiff incorporates the factual allegations in paragraphs 1-55 concerning his reporting, business, alleged targeting, and injuries. He alleges that CNN published false factual statements about him to third parties, including broad election-season coverage, and that those publications damaged his reputation, educational enterprise, reporting audience, and livelihood.

72. Plaintiff alleges that material omissions of crucial facts, misrepresentations, and known falsehoods by Donie O'Sullivan acting as a hachetman for Senator Warner of the last decade to destroy George Webb's free speech at YouTube.

73. Plaintiff alleges that CNN knew the identified factual statements were false or published them with reckless disregard for their truth. Webb repeatedly explained to CNN and Donie O'Sullivan that the NIH and Dr. Fauci had entered into an illegal joint venture with the Wuhan Lab using various universities like the University of North Carolina and Ralph Baric as proxies for illegal Gain of Function research. O'Sullivan responded wth derision and contempt, unleashing a six month long series of attacks by CNN news anchors and panel up to an including November 5th, 2021, Election Day in America.

Plaintiff further alleges that CNN knew the publications would harm his journalism and livelihood. Knowledge of probable harm or hostility alone is distinct from knowledge of falsity. See New York Times Co. v. Sullivan, 376 U.S. 254 (1964), and Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974).

74. This count concerns timely, separately actionable publications that are not barred by the earlier judgment. Michigan's one-year libel and slander limitations period and applicable accrual rules must be applied to each publication. Continued harm from an old publication does not, by itself, restart the limitations period. [Identify any genuinely new publication, its date, and any legally supported tolling basis.]

75. Plaintiff alleges actual injury to his business, profession, reputation, and feelings from the identified publications. He seeks actual and any legally available exemplary damages under MCL 600.2911, without duplicate recovery.

76. Warner's false statements are included as facts supporting the government-proxy theory to the extent identified and actionable. Warner is presently named in his official capacity for prospective relief. This count does not create an official-capacity damages claim against him for defamation or a new Bivens claim. Any proposed personal-capacity tort claim requires separate analysis of the statements, scope of employment, federal substitution rules, immunities, and the proper defendant before amendment.

**DECLARATORY RELIEF AND REQUESTED REMEDIES**

77. An actual controversy concerns Plaintiff's fundamental freedoms of speech and press, the legality of any ongoing governmental suppression through YouTube, and access to his reporting and educational archive. Plaintiff seeks declarations and relief to the extent he establishes standing and an actionable claim. The Plaintiff invokes "Dred Scott violated his Terms of Service in seeking his Constitutional Fundamental rights" as the analogy.

78. Plaintiff requests preservation, under an appropriate order and applicable evidentiary standards, of relevant channel files, backups, metadata, transcripts, subscriber and monetization records, account notes, notices, appeals, policy versions, automated moderation outputs, escalation records, and communications about his channel involving Warner's office, CNN personnel, and YouTube decision-makers. Discovery must be relevant, proportional, and consistent with privileges and constitutional protections.

79. Plaintiff seeks recovery or export of surviving original materials and restoration of access to reporting unlawfully restricted through a proven governmental directive, to the extent the Court may lawfully order such relief. He also seeks a narrowly tailored injunction against further unconstitutional coercion. Any order must respect independently lawful restrictions and defendants' constitutional rights.

80. Plaintiff alleges that the challenged conduct destroyed his livelihood and requests compensatory damages of $2,000,000 for each calendar year from 2017 through 2026, inclusive, for a requested total of $20,000,000. This is Plaintiff's requested valuation, not an established loss or an annual statutory entitlement. Recovery must be supported by proof, causation, a legally available damages cause of action against each liable defendant, limitations, and preclusion rules. Plaintiff seeks no double recovery for the same injury.

81. The asserted losses include impairment of his journalism and educational enterprise, loss of audience relationships and earning opportunities, harm to reputation, loss of access to original work, and other provable economic and non-economic injury recoverable under an actionable claim. The Plaintiff asserts investment of nearly one million dollars, and business losses for every year of the ten years of continuous harassment by CNN and Senator Warner through the destruction of the body of work and the network of over 111,000 citizen journalists created by Webb.

82. Plaintiff alleges that the identified acts were wanton, willful, and egregious, and that CNN and Warner made identified false factual statements knowing they were false and knowing they would harm George Webb Sweigert. Plaintiff requests exemplary or punitive damages only against a defendant and under a cause of action for which such relief is legally authorized.

83. Plaintiff also requests trebling of recoverable damages. A $60,000,000 award is requested based on the valuation and appreciation of two 111,000 person citizen journalists networks that were destroyed in April 2021 and again in August 2026.

84. The constitutional counts presently seek prospective equitable relief. Plaintiff does not assume that a constitutional violation itself supplies a monetary cause of action against Warner or the private defendants. Egbert v. Boule, 596 U.S. 482 (2022), forecloses a new Bivens remedy for First Amendment retaliation. The requested monetary relief must rest on a separately available and adequately pleaded cause of action, including Count III against CNN to the extent timely, unbarred, and proved.

85. Plaintiff requests relevant discovery concerning his reporting archive, audience analytics, business losses, and communications about the challenged suppression and publications. He requests recoverable costs and fees only where a specific statute or other applicable legal basis authorizes them.

86. Plaintiff challenges governmental suppression of protected speech and knowingly false actionable factual publications, rather than criticism or political

affiliation alone. Liability and monetary relief must rest on each defendant's own actionable conduct and a recognized legal basis.

**PRAYER FOR RELIEF**

Plaintiff asks the Court to:

A. Declare the parties' rights concerning the alleged government-proxy violations of Plaintiff's speech and press freedoms;

B. Enjoin proven ongoing unconstitutional government coercion directed at Plaintiff's protected journalism and educational work;

C. Order appropriate preservation, recovery, export, or restoration of Plaintiff's surviving archive where legally justified;

D. Award the requested $20,000,000 in compensatory damages, calculated at $2,000,000 for each calendar year 2017-2026 inclusive, against defendants liable under a legally available damages cause of action, in the amount established by proof;

E. Award legally authorized exemplary or punitive damages and any statutorily authorized trebling, subject to the limitations stated above and without duplicate recovery;

F. Award allowable costs and specifically authorized fees; and

G. Grant other relief consistent with the actionable claims, standing, and defendants' constitutional rights.

**JURY DEMAND**

Plaintiff demands a jury trial on all issues triable by jury.

Respectfully submitted,

George Webb Sweigert, Plaintiff, pro se

8150 Summerfield Road

Lambertville, Michigan 48144

Telephone: 503-919-0748

Email: georg.webb@gmail.com

Date: October 13, 2026

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

George Webb Sweigert

**(b)** County of Residence of First Listed Plaintiff Monroe, Michigan
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
George Webb Sweigert, Plaintiff, pro se
8150 Summerfield Road, Lambertville, MI 48144
503-919-0748; georg.webb@gmail.com

**DEFENDANTS**

Google LLC d/b/a YouTube; Mark R. Warner, U.S. Senator (official capacity); Cable News Network, Inc.

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

Case: 4:26-cv-13913
Assigned To : Kumar, Shalina D.
Referral Judge: Altman, Kimberly G.
Assign. Date : 10/14/2026
Description: CMP SWEIGERT V GOOLE LLC ET AL (lh)

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)* Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☒ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
U.S. Const., Amends. I & V; 28 U.S.C. 2201-2202; MCL 600.2911

Brief description of cause:
Alleged government-induced speech/press suppression and defamation; damages and equitable relief.

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** 60,000,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions)*:

JUDGE Gershwin A. Drain DOCKET NUMBER 2:20-cv-12933-GAD-KGA

DATE
October 13, 2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

PURSUANT TO LOCAL RULE 83.11

1. Is this a case that has been previously dismissed?

☐ Yes
☒ No

If yes, give the following information:

Court: ______

Case No.: ______

Judge: ______

2. Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)

☒ Yes
☐ No

If yes, give the following information:

Court: U.S. District Court, Eastern District of Michigan

Case No.: 2:20-cv-12933-GAD-KGA

Judge: Gershwin A. Drain

Notes : Prior CNN action dismissed 3/21/2022; new later-event claims. Demand: $20M base; $60M with requested trebling.